TIMOTHY E. TOWNSEND vs. RILEY MELVIN, Sheriff.

*Replevin—Conditional Sale of Personal Property—Waiver of Vendor's Right to Enforce his Claim,—After Lapse of Four Years.*

1.   The vendor sold certain personal property to the vendee with an agreement upon the part of the vendee that the title to the property should remain in the vendor until the note given for the property should be entirely paid.   Four years elapsed after the note became due before the vendor sought to enforce his claim by replevin.   *Held* that the vendor had waived his right to retake the property, and would be stopped from so doing after the goods had been levied upon by a creditor, or sold to a *bona fide* purchaser for value.

2.   What will constitute a conditional sale.

(*November 1, 1905.*)

LORE, C. J., and PENNEWILL, J., sitting.

*George M. Jones* and *William M. Hope* for plaintiff.

*W. Watson Harrington* for defendant.

Superior Court, Kent County, October Term, 1905.

ACTION OF REPLEVIN (No. 35, October Term, 1904), to recover the price or value of six red dehorned cows, each of the value of twenty dollars, one brindle dehorned cow of the value of fifteen dollars, one gray mare and one colt by her side, the value of both together being forty dollars, and one iron gray colt of the value of thirty-five dollars.

The pleas were (1) *non cepit*, (2) *cepit in alio loco*, (3) property in a stranger, (4) property in one George A. Gooden, (5) property in defendant, and two special pleas, one setting forth that the cattle, etc., were in the possession of Gooden and liable to the demands of his creditors and were seized and sold under execution process by the sheriff, and another one setting forth that the cattle, goods, etc., were the property of the said George A. Gooden and not the property of the said Townsend, etc., and were seized and sold under xecution process.

At the trial it was proved that the above property was levied upon on September 1, 1904, as the property of George A. Gooden, in execution of a chattel mortgage held by Hon. William C. Spruance. That soon thereafter the plaintiff brought his action of replevin. The suit was for the value of said property, the same having been retained and counterbond being given by the Sheriff.

The evidence upon the matter of plaintiff's title to the property was as follows:

*Timothy E. Townsend*, the plaintiff, testified concerning the same as follows:

I am a farmer and drover and have been in such business for twenty years. My droving business carries me from Sussex County to Delaware City—all through the State of Delaware, practically. In October 1900, I had been up in New Castle County with a bunch of cattle, I think it was Friday or Saturday—I will not say positively about the date, because it has been some time—and I only had I think one pair of oxen left on my hands. So I met George A. Gooden, or saw him at his house, or on the road, or there out near the iron bridge in New Castle County in Deaconsville, and I said, " George, here is a pair of oxen about ready for the butcher, and if you have got a place for them, they cost me seventy dollars and if you take them home with you you can have all over the seventy dollars received for them when they are sold. I think there is some chance for you to make a dollar." George said, " I will take them ;" and we called a Mr. David—he was right by— to witness that they were my oxen until they were paid for. That was the agreement, the way he took them. When I came up again, I think in that same fall, Mr. Gooden said to me, " I traded those oxen to Willard Pierce down here at Smyrna, and I think I got a good deal for them. I got a gray mare with foal. I needed the mare to work on the farm, and I would like to have her the same way that I had the oxen. She can remain here as your property in place of the oxen." This was probably about the first of November 1900. The mare remained with George A. Gooden until

she was sold at sheriff's sale. She was then in fair condition. She had a colt by her side at the time of the sale and one three years old. Mr. Gooden never paid me for that mare.

In 1899 I sold Mr. Gooden some cattle. That transaction was in writing.

(At this point the paper in question, a note, after being proved by the attesting witness, George W. Turner, was offered in evidence being as follows):

"I, George A. Gooden, promise and oblige myself, my heirs, executors or administrators, to pay to T. E. Townsend or his executors, administrators or assigns, two hundred and twenty-five dollars, lawful money of the State of Delaware, with lawful interest, for value received, on or before the first day of June, A. D. 1900.

"AND FURTHER, I do hereby authorize and empower any Justice of the Peace within the State of Delaware, or elsewhere, to enter judgment on the above obligation, without process against me, my heirs, executors or administrators, at the suit of the said T. E. Townsend or his executors, administrators or assigns, at any time after the date hereof with stay of execution till the first day of June, A. D. 1900. And I do hereby release all and all manner of error or errors in any such judgment and in the execution to be issued thereon.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this third day of November, A. D. one thousand eight hundred and ninety-nine.

"Signed, sealed, and delivered
in the presence of

"GEORGE A. GOODEN, [SEAL.]

"GEORGE W. TURNER.

"It is fully agreed and understood that the within note is given for 5 cows and 8 red heifers and they are to be T. E.

Townsend's until within note is paid in full, both principal and interest.

"I set my hand this November 3, 1899.

"GEORGE A. GOODEN.

"Witness: GEORGE. W. TURNER."

(The witness continued):—The heifers mentioned in this note were never paid for by George A. Gooden; the note was never paid. The seven cows I took under the writ of replevin were a part of the cows mentioned in this note. I took these cattle back from George A. Gooden about the first of October, 1904, and took them to Mr. George Inselow's about two miles west from his place on the road from Clayton to Blackiston's Corner Cross Roads. That was about a week before I replevied them. They stayed at Mr. Inselow's two or three days, and then the Sheriff came and took them. At the time I issued the writ of replevin, about October 1, 1904, for the cattle and mare and colt, all the animals were at Mr. George A. Gooden's on Mr. Davis' farm in Kenton Hundred, Kent County.

CROSS EXAMINATION.

*By Mr. Harrington:*

X. What was the understanding between you and Gooden when you left these oxen at his place? A. That they were to remain there as mine and that he was to have all over seventy dollars that they would bring.

X. What was the understanding between you and Gooden as to the mare? A. I was up there a short time after that and he says, " I traded the oxen for the mare, and I would like to have the mare on the same terms that I got the oxen;" that he needed the mare or a horse to work.

X. Did you ever tell Mr. Gooden that he could have the mare for seventy dollars? A. I said if he paid me the seventy dollars she would be his.

X. You told him that? A. If he paid me that, yes, sir; but she remained mine the same as the oxen. That was the understanding; the way I understood it.

X. Do you remember how many times you had conversations with Gooden in relation to this mare? A. No, sir; I do not. Of course I was up there a good many times afterwards.

X. What was it you told him about the mare? A. That he could have the mare on the same conditions as the oxen. He said he wanted her on the same terms.

X. And I think you just stated that you told him that if he would pay you seventy dollars he could have the mare? A. Yes, sir; if he paid me the seventy dollars, the same as the oxen; same price.

X. Did you give Gooden authority to sell those oxen to whomsoever he saw fit? A. I just told him he could have all over the seventy dollars.

X. Did you authorize him to sell the mare for seventy dollars? A. No, sir.

X. Did you authorize him to sell the mare to whomsoever he pleased? A. No, sir.

X. Did not you just state a moment ago that he was to have the mare on the same terms as the oxen? A. If he paid me the seventy dollars he could have the mare.

*James F. David*, being called as a witness on behalf of the plaintiff, testified upon the same matter as follows:

*By Mr. Jones:*

Q. What did Mr. Townsend say to Mr. Gooden, in your presence, after he called you as a witness? A. I recollect Mr. Townsend letting the oxen go home with him for the seventy dollars.

Q. Did you hear Mr. Townsend say that to Mr. Gooden? A. He called my attention to witness this sale that they had made, to the agreement that they had between them. It was but a few words I heard. I understood that after he sold the oxen that he

should have the balance over seventy dollars of what they sold for; he was to receive all over seventy dollars that he got for the oxen. That is straight. That is what he said. I heard that talk in the yard. We were in the yard quite a while.

Q. He said he was to have the oxen, and all he got over seventy dollars was to be Gooden's? A. Yes, sir; he had seven or eight more cattle and a pair of mules there with him.

When the plaintiff rested, the defendant moved for a nonsuit on two grounds, viz:

*First.* That the plaintiff had not proved that the Sheriff had possession of the property in question at the time suit was brought.

*Second.* That the plaintiff had proved a conditional sale both as to the cows and to the mare and colt, and having slept on his rights for four years, and until after the property had been levied upon by the judgment creditor, it was a clear case of laches, and under the decision of the Superior Court of this State in the case of *Matthews vs. Smith, 8 Houston, 22,* he had waived his right and could not recover.

LORE, C. J.:—The Court have considered the motion for a nonsuit as fully as we could during the recess, and we are quite satisfied that the sale of the seven cows was a conditional sale and comes clearly within the case of *Matthews vs. Smith, 8 Houston, 22.* We are not fully prepared, however, to announce our decisive judgment at present as to the oxen and the mare and colts which were substituted for the same, according to the testimony. For that reason we decline to grant the nonsuit. The question can be raised in the prayers and determined then, with a fuller opportunity to consider the whole case.

(Thereupon the defendant, after proving the chattel mortgage of Hon. William C. Spruance against George A. Gooden, and the sale of the property in question by the Sheriff under said chattel

mortgage, called *Hon. William C. Spruance,* who was sworn and examined as follows) :

*By Mr. Harrington.*

Q.    When did you first have any notice or knowledge of any contention on the part of Mr. Townsend as to his rights in this property ?    A.  I never saw Mr. Townsend, and I don't know that I ever heard of him, until after this property was levied upon.    I had no knowledge whatever of any claim of his to this property of any kind until after the levy had been made, which was the first day of September, 1904.    I was very much astonished shortly after that to hear that Mr. Townsend had a claim to it.    That was sometime after that.

Q.    Did your chattel mortgage cover those particular cows, horse and colts that are mentioned in the plaintiff's declaration ?    A.  Yes, sir ; covered all of them.    They were all sold at Sheriff's sale, the Sheriff having given a counterbond or property bond.

*George A. Gooden,* being sworn as a witness on behalf of the defendant, testified to the transaction as to the yoke of oxen, mare and colts as follows :

*By Mr. Harrington.*

Q.    Did or did not Mr. Townsend sell to you a gray mare in or about the month of October, 1900 ?    A.  Yes, sir ; in this way : he left a yoke of oxen there and told me to sell them for seventy dollars and all over that I got I could have.    So I taken the oxen and traded them for a gray mare, and when he came up I told him about it, and said I would like to have the mare at the same price he asked me for the oxen, seventy dollars, and he said all right. That is the way I understood it.

Q.    Was there anything said by Mr. Townsend or by you about Mr. Townsend's remaining the owner of the property until the seventy dollars was paid ?    A.  No, sir ; just what I told you is all that was said about it.    That is the way I understood it exactly

## PRAYERS OF PLAINTIFF.

*First.* That the bailment of the yoke of oxen by Townsend to Gooden, which Gooden afterwards exchanged for the mare with foal, was such a bailment as to enable the bailor to maintain replevin for the mare and her offspring from the bailee, and to recover the value thereof, with interest from the beginning of this action.

*Second.* That the sale of the cattle by Townsend to Gooden on November 3, 1899, was a conditional sale, and the title thereto remained in Townsend until the note was paid, both principal and interest, and that Townsend had such a property in them as to enable him to maintain an action of replevin.

*Third.* That unless Townsend had committed some act divesting himself of the title to the property and the right of possession thereof, he is entitled to recover the value of the cattle taken under the present action of replevin, with interest from the beginning of this action.

*Fourth.* That the extension of the time of payment or forbearance to retake the property after default in payment is not sufficient to amount to a waiver of Townsend's right to retake the property.

*Fifth.* That if the jury believe that Townsend had the right of property in the horses and cattle replevied and the immediate right of possession thereto at the time of the commencement of the action he is entitled to recover in this action the value of the said horses and cattle, with interest from the beginning of this action.

*Sixth.* That if George A. Gooden became the possessor of said cattle by virtue of a conditional sale, no act of the said George A. Gooden without the assent of the said Timothy E. Townsend would divest the title of the said Townsend or strengthen the title of the said Gooden.

*Seventh.* That if the jury believe that Townsend had such right of property and such immediate right of possession in either the horses or cattle, he is entitled to recover the value of such horses and cattle.

*Eighth.* That the verdict of the jury, if they believe the defendant liable, must be the value of the property taken, with interest from the commencement of this action, as the property so taken was sold by the defendant.

## DEFENDANT'S PRAYERS.

*First.* The failure of Townsend to exercise his right to retake the cattle under the conditional sale of the same of November 3, 1899, until after the execution of the mortgage of the same of July 30, 1904, and until after the same was levied upon by the Sheriff under the execution of *Spruance vs. Gooden,* was a waiver of such right as against the said mortgage and execution, and the plaintiff cannot in this action recover anything of the defendant for the value of said cattle.

*Second.* If the jury shall be satisfied from the evidence that the gray mare was sold by Townsend to Gooden without the condition that the ownership of the same should remain in Townsend until the price of the same should be paid, then the said mare and her colts would be subject to be levied on and sold under said execution against Gooden, and the plaintiff cannot recover any thing of the defendant for the value of said mare and colts.

*Third.* If the jury shall be satisfied from the evidence that the gray mare was sold by Townsend to Gooden in the fall of 1900 with the condition that the ownership of the same should remain in Townsend until the price of the same should be paid, the failure of Townsend to retake possession of the same until after the execution of said mortgage and until after the same were levied on under said execution, was a waiver of such right as against said mortgage and

execution, and the plaintiff cannot recover anything of the defendant for the value of said mare and colts.

*Fourth.* That the Court instruct the jury to find for the defendant in respect to said cattle.

*Fifth.* That the Court instruct the jury to find for the defendant in respect to said mare and colts.

*Sixth.* That the Court instruct the jury to find a verdict for the defendant.

LORE, C. J., charging the jury :

Gentlemen of the jury :—From a careful consideration of all the evidence in this case, the Court are entirely satisfied that it is a case in which binding instructions should be given to you ; that so far as the seven cows were concerned, it was a conditional sale, and as to the mare and colts, it was either a conditional sale or was an absolute sale. If it was an absolute sale, the plaintiff cannot recover, because he would then have no right to the possession of the property, and if it was a conditional sale, as the sale of the cattle, it would come within the case of *Matthews vs. Smith, 8 Houst., on page 22,* where under th eterms of a conditional sale it is *held* : " When under the terms of one of these conditional contracts the vendor has a right to proceed and enforce it, that right must be exercised within a reasonable time. The vendor cannot lie by, but must resort to his remedy within the passing of the first term of Court subsequent to the failure of payment, or at least by the second term after the default has been made. In the case under consideration fully nine months had elapsed after default of payment on the last note and upon this ground the defendants are entitled to a verdict."

But in this case not only nine months elapsed, but about four years from the time the right of the plaintiff in this case to enforce

his claim for default in paying for these cattle accured, and having laid by so long he waived that right and is estopped after the goods had been levied on by a creditor, or sold to a *bona fido* purchaser for value.

For these and other reasons we instruct you to return a verdict for the defendant.

Verdict for defendant.