### STATE vs. JACOB WHITE.

1. LARCENY—ELEMENTS.

Larceny is the taking and carrying away of the personal goods and chattels of another with the felonious intent of the taker to convert the property to his use without the consent of the owner.

2. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE.

Larceny may be proved either by direct evidence or by circumstantial evidence strong enough to exclude any reasonable inference or conclusion other than that the accused is guilty.

(*April* 20, 1916.)

BOYCE, J., sitting.

*John B. Hutton*, Deputy Attorney General, for the state.

*James M. Satterfield* for the accused.

Court of General Sessions, Kent County, April Term, 1916.

Jacob White was tried for larceny, and the jury returned a verdict of not guilty.

INDICTMENT No. 9, April Term, 1915, for larceny.

The accused was tried for the larceny of a black mare on the night of January 7, 1915, alleged to be the property of James H. Outten.

The state relied for conviction wholly upon circumstantial evidence. The particular places involved were Felton, Masten's Corner and Harrington, all in Kent County, Delaware, Harrington

being six miles south of Felton, the two towns being directly connected by a public road west of and parallel to the Delaware Railroad, and Masten's Corner being about two miles west of said Harrington-Felton road about midway between said towns, and being located at the point of a triangle formed by two roads, one running in a southwestern direction from the Harrington-Felton road, starting about a mile south of Felton, and the other running in a northwestern direction from the same road about a mile north of Harrington. The other place involved was Burrsville, ten miles west of Harrington, the latter place being partly in Kent County, Delaware, and partly in Caroline County, Maryland.

The Outten farm from which the mare was stolen was located on the Harrington-Burrsville road, about four miles from the latter town.

On the same night that the Outten mare was stolen a horse was also stolen from the stable of one S., about one mile west of Burrsville, in the State of Maryland. According to the evidence of the state, the Outten mare was stolen after ten o'clock on the night of January 7, 1915, and was missed by the owner early the following morning. The weather up until ten o'clock was not cool enough to freeze the ground, but after that hour it became cooler and the following morning the ground was frozen.

The prosecuting witness Outten, upon missing his mare, investigated in front of his residence along the public road, and discovered tracks made by a horse with a large foot and wearing a shoe roughed in the center and on the ends. He also discovered tracks made by a narrow tread rubber-tired vehicle to which the horse with a large foot was evidently attached, as he found evidence of its having been hitched along the side of the road near his place. He was also able to identify the tracks made by his stolen mare from the fact that he had recently put three frost nails in the shoes and a quarter shoe on one of her hind feet to prevent interfering. On looking along the road in the direction of Burrsville, he found the same large horse track and also the tracks of the rubber-tired vehicle leading in the direction of Burrsville, and also the same tracks leading in the opposite direc-

tion, together with the track of another horse. Proceeding towards Harrington he tracked the vehicle, the large horse, his own horse, and a third horse to Harrington, at the same time observing the large horse track and buggy track leading in the opposite direction, until he reached the stone road leading through the town towards Felton, where no impression was made. After reaching the town limits proceeding towards Felton, he again discovered the same tracks going in both directions until a mile south of Harrington, upon reaching the road leading to Masten's Corner, where he found that the back track appeared on the Masten's Corner road, but not on the Harrington-Felton road. Another witness traced the back track (the large horse track and buggy) to within one-quarter of a mile of Masten's Corner, where he turned off the Masten's Corner road and did not pursue the tracks further.

The prosecuting witness proceeded on the direct road to Felton, tracking the buggy and three horses in that direction until he reached the road leading from Felton to Masten's Corner, where he noticed the original track of the large horse and rubber tired buggy, leading from the Felton road on to Masten's Corner road; from this point on to Felton the same tracks that he had been following continued and also the back tracks. Upon arriving at Felton, upon being informed that two horses had been shipped from Smyrna, he went to Smyrna to investigate and the tracking proceeded no further. The accused lived on a farm about two miles north of Felton. On the night in question a large horse drawing a high-pitched rubber-tired buggy in which were three men, was seen by a witness in the neighborhood of Burrsville about ten o'clock. Another witness saw the same buggy containing two or three men later on the same night on the Harrington-Burrsville road, but could not identify the occupants of the vehicle on account of the darkness.

The state, upon the above stated facts, was allowed to prove, against objection (defendant's counsel reserving the right to move to strike out the testimony at a later stage), by several witnesses, that while in the store of one J., at Masten's Corner, shortly after seven o'clock on the evening of December 7, 1915, a man strongly

resembling the accused,—"looked like the man," "believed he was the man," "but would not swear he was the man" (it being shown that he was medium height, heavy set, with red face, black hair and black moustache, and spoke broken English—all of which characteristics tended to describe the accused)—came in the store, stating that he had lost his way and inquired the road to Harrington. He was told the way and one of the witnesses went out in front of the store, which was largely of glass and was fully lighted, and saw the man who he stated he had no doubt was the accused, get in a high-pitched rubber-tired buggy to which was attached a large horse and which contained one or two others besides the accused, and drive off in the direction of Harrington, being the same road upon which a previous witness had testified he had traced the back tracks of the horse and buggy to within one-quarter of a mile of Masten's Corner. The identical horse and buggy were afterwards found in the possession of the accused on his farm near Felton, and a shoe taken from one of his feet exactly fitted one of the tracks in question made in the road leading from Burrsville to Harrington; the prosecuting witness having taken up the dirt in a frozen state containing the track, and preserved it in a box.

At the conclusion of the state's case, counsel for the accused moved that the testimony of the witnesses as to the identification of the accused at Masten's Corner be stricken out as immaterial, on the ground that as no tracks had been traced to Masten's Corner, the proper connection had not been made, and the testimony was irrelevant, and also moved that the jury be given binding instructions to find a verdict of not guilty. Both motions were refused.

The accused produced evidence tending to prove an alibi, and claimed that the horse and buggy in question did not belong to him, but were left at his place by one O., about a week or ten days before the time of the theft, with the understanding that he would board the horse at two dollars per week until called for; that O. subsequently returned to his place on one or more occasions with another man, whom he called Louie, and that in the late afternoon or evening of January 7, 1915, O. and Louie drove

off with the large horse and rubber-tired buggy, and early the following morning O., returned with the horse and buggy alone, left it with the accused, stating that he would call for it later, and walked away. O..never thereafter called for the horse and buggy.

Several witnesses were called on behalf of the accused to prove that O. was a Russian Jew, like the accused, spoke broken English and resembled the accused, being slightly taller and not quite so heavy set, but having a florid complexion, black hair and black moustache. This evidence was controverted by the state.

The good character of the accused for honesty and fair-dealing was also proved by several witnesses.

BOYCE, J., charging the jury:

Jacob White, the accused, is charged in the indictment, upon which he is being tried, with the larceny of a mare, on the night of January 7, A. D. 1915, in this county, it being alleged that the mare was the property of James H. Outten, the prosecuting witness.

[1] Larceny is the taking and carrying away the personal goods and chattels of another with the felonious intent of him, the taker, to convert the property to his use without the consent of the owner.

Larceny consists of three main essential elements, namely, the taking and carrying away personal property which is the severance thereof from the possession of the owner against his will; the taking of property of some value from a person with a legal right to the possession thereof; the intent to steal, which embraces the intent to permanently deprive the owner of the possession of the property stolen, and the intent of the taker of the property to derive some gain or profit thereby.

[2] As we have shown, one of the elements of the crime of larceny is the taking and carrying away of the alleged stolen property by the accused. This may be proved by direct evidence or by a proper amount of circumstantial evidence. In this case the state has shown the asportation by someone of the property mentioned in the indictment. The state has not attempted to

show by direct evidence—that is by eye witnesses—that the accused committed the crime charged, but relies wholly upon circumstantial evidence, that is, upon a chain of circumstances which it is claimed establishes the guilt of the accused.

Circumstantial evidence, like direct evidence, when it establishes the guilt of the accused, may be relied upon for a conviction. Whenever circumstantial evidence is relied upon, it must be of such a character and strong enough to exclude any reasonable inference or conclusion other than that the accused is guilty of the crime charged. It must be such as (1) to enable the jury to find the crime proved beyond a reasonable doubt; (2) that the circumstances proven are in all respects consistent with the theory of the guilt of the accused; and (3) that such circumstances are inconsistent with any other reasonable theory than the guilt of the accused.

\*  \*  \*  \*  \*  \*  \*

In order to warrant a conviction there must be clear proof that the crime charged was committed by the accused.

If upon all the evidence introduced by the state, and by the accused, there results a reasonable doubt in your minds upon any essential element of the crime charged, the accused is entitled to an acquittal. If on the other hand, the evidence satisfies you of the guilt of the accused, beyond a reasonable doubt, your verdict should be guilty.

Verdict, not guilty.