IN RE PETITIONS OF CLARA D. BAKER, ADMRX. of Norris L. Baker, Deceased, and of Harry Oliphant.

(*July* 27, 1932.)

HARRINGTON and RICHARDS, J. J., sitting.

*Frank M. Jones* for Clara D. Baker, Admrx.

*James M. Tunnell* for Harry Oliphant.

Superior Court for Sussex County, No. 60, June Term, 1932.

HARRINGTON, J., delivering the opinion of the Court:

At common law a conditional sale contract, though not recorded, could reserve title in the vendor until the terms of such contract were complied with, and such a contract did not merely create a prior lien on the property sold either as against the vendee, his creditors, or pur-

chasers from him. See cases collected in *Starr v. Govatos, et al.,* 3 *W. W. Harr.* (33 *Del.*) 66, 130 *A.* 392.

Because of the lack of notice bargains of this character were, however, in most cases subject to the qualification that where the rights of third persons were involved, the vendor had to assert his title to the property sold, in a reasonable time or his rights thereto would be lost. *Townsend v. Melvin,* 5 *Penn.* 495, 63 *A.* 330; *Mathews v. Smith,* 8 *Houst.* 22, 31 *A.* 879.

That such secret bargains, nevertheless, often misled both creditors of and purchasers from the vendee, and resulted in injustice to them, is apparent; and the *Uniform Conditional Sales Act of* 1919 (*Chapter* 192, *Vol.* 30, *Laws of Delaware*) was, among other things, intended to remedy these defects in the common law rule.

Under this act two things are, therefore, apparent:

1. That conditional sale agreements reserving "property" in the seller are still valid and binding "as to all persons" except as otherwise provided by other sections of it. *Section* 4, *Chapter* 192, *Vol.* 30, *supra.*

True, his "property" rights therein are so limited by other provisions of the statute that they in some respects partake of the nature of a lien, or pledge, but they are, nevertheless, property rights recognized by the law. *Starr v. Govatos, et al.,* 3 *W. W. Harr.* (33 *Del.*) 66, 130 *A.* 392; *Cont. Guar. Corp. v. People's Bus Line,* 1 *W. W. Harr.* (31 *Del.*) 595, 117 *A.* 275.

2. That such agreements are, however, "void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale." *Section* 5, *Chap.* 192, *Vol.* 30, *supra.*

The conditional sale agreement of October 1, 1930,

between Oliphant as vendor and Pusey as vendee, by agreement of all parties interested, was substituted for the original agreements of 1928 and 1929 in which both Pusey and Wright were the vendees, and related to the same property. That when made the original agreement effectively reserved "property" or title of some character in Oliphant, must be conceded. That only one of these agreements was filed for record within ten days after it was made and that even the October 1 agreement was not so filed until December 16, 1930, is also conceded. The disputed question, therefore, is whether under that contract the "property" therein described could be claimed by Oliphant as against the administratrix of Baker, whose chattel mortgage against Pusey, covering the same property, was not executed until December 30, 1930, and, therefore, not until two weeks after the conditional sale agreement of October 1, 1930, had been filed for record.

It is conceded that the Sheriff claimed to sell the absolute legal title to the articles covered by the Baker chattel mortgage, and not merely the rights of Pusey therein as the vendee under a conditional sale contract. Based on this fact, Oliphant claims the proceeds of such sale and not the property sold. That question was not discussed at the argument, but Oliphant's claim would seem to be based on the well established general rule that where the property of one person has been sold by another the owner may waive the tort, in effect adopt and confirm the sale, and sue the seller for the purchase price received by him in an action for money had and received. *Hutton v. Wetherald*, 5 *Harr.* 38; *Dickerson v. Layton*, 6 *Boyce* 85, 97 *A.* 231; *Jester and McDaniel v. Knotts*, 7 *Boyce* 350, 57 *A.* 1094; *Burton's Adm'r v. Miller*, 1 *Harr.* 7; *Woodward on Quasi Contr.*, 277.

Oliphant's action is not against the Sheriff, who made the sale, but after receiving the proceeds therefor that officer paid them into this court and the fact that the question

is raised on a petition to draw that money out, instead of in an action of assumpsit, against the sheriff, would not seem to affect the principle involved.

Having reached that conclusion, Oliphant's rights to the proceeds of the sale would seem to be clear.

■ True, the conditional sale agreement of October 1, 1930, was not filed for record within ten days after its execution but it had been recorded two weeks before the chattel mortgage was executed and delivered. Under the statute the "property" rights of Oliphant were, therefore, not affected thereby. *Del. Trust Co. v. Elder & Co.,* 12 *Del. Ch.* 263, 112 *A.* 370; *Bloomingdale Bros., Inc., v. Cook,* 152 *A.* 666, 8 *N. J. Misc.* 824; *Morey & Co. v. Schaad,* 98 *N. J. Law* 799, 121 *A.* 622; *Twin Theatre Co. v. Liquid Carbonic Co.,* 134 *Ga.* 460, 67 *S. E.* 1033.

In reaching this conclusion, we have not overlooked the fact that the original sales were to Pusey and Wright and not to Pusey alone. In those sales, as we have already pointed out, title was, however, reserved by Oliphant and the mere fact that by the agreement of all parties the interest of Wright in the property sold was subsequently transferred to Pusey, and as a means of carrying out that agreement, a new note, containing the same reservation of title, in which Pusey alone was described as the vendee was substituted, does not affect the rights of Oliphant in such property or in the proceeds arising therefrom.