## William Jones
*v.*
## Barney Nellis.

1. Title to stolen property, *in the hands of an innocent purchaser.* A purchaser of a chattel can acquire no better title than the vendor had.

2. Same — *exceptions as to negotiable paper*, etc. But, as an exception to that rule, by the common law, the *bona fide* holder of money or negotiable paper, transferable by mere delivery and not overdue, who has taken it in the usual course of business, and for a valuable consideration, acquires a perfect title.

3. So it is *held*, where a seven-thirty government bond had been stolen, and bought in the usual course of trade by a party who had no knowledge that it had been stolen, such purchaser acquired a perfect title to the bond, even as against the former owner from whom it had been stolen.

4. Effect *of the sixty-second and sixty-fourth sections of our Criminal Code, upon that rule.* Those sections of the Criminal Code, the former defining what larceny is, and the latter declaring that no purchaser of "property" which has been obtained by larceny, whatever his good faith in that regard, shall acquire title as against the owner, do not affect the common law rule as above laid down, in reference to negotiable paper, as the term "property" is used in the latter section in such a restricted sense as not to embrace either money, or bonds, bills and notes.

Writ of Error to the Recorder's Court of Chicago; the Hon. Evert Van Buren, Judge, presiding.

This was an action of trover brought in the court below by William Jones against Barney Nellis, to recover the value of a

seven-thirty government bond for $500, which had been stolen from the plaintiff and bought by the defendant. The facts in the case are contained in the following stipulation :

1. That the five hundred dollars seven-thirty government bond in controversy was, on the 5th day of January, 1866, the property of the plaintiff, and was on that day stolen from his safe by ———— Joslyn, who was afterward, to wit, at the March Term of this court, convicted for the larceny of the same.

2. That the said Joslyn, afterward and before convicted, sold said bond to defendant for the sum of five hundred dollars; said defendant purchasing said bond *bona fide*, for a full consideration, and in the usual course of trade, without any knowledge that the same had been stolen.

3. That said bond is the identical bond stolen from the plaintiff by said Joslyn, and is of the value of five hundred dollars.

4. That said bond is payable to bearer, and that the title to it passes by delivery in the same manner that the title to currency passes.

5. That, before the commencement of this suit, plaintiff demanded said bond from said defendant, who refused to deliver the same to him.

A trial resulted in a finding and judgment for the defendant. The plaintiff thereupon sued out this writ of error.

Messrs. MONROE, McKINNON & TEWKESBURY, for the plaintiff in error.

Messrs. SCATES, BATES & TOWSLEE, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court :

This was an action of trover, brought by Jones to recover the value of a seven-thirty government bond for $500, which had been stolen from him, and bought, in the usual course of trade, by Nellis, without knowledge that it was stolen property.

The rule is well settled, at common law, that the *bona fide* holder of money or negotiable paper, transferable by mere delivery and not overdue, who has taken it in the usual course of business, and for a valuable consideration, acquires a perfect title. The authorities are referred to and reviewed in 2 Parsons on Notes and Bills, page 265, *et seq.*, and 1 Smith L. C. 250, *Miller* v. *Race* and notes, and it is unnecessary to quote them more specifically. This exception to the common law rule, that the purchaser of a chattel can acquire no better title than the vendor had, has been adopted because, in the language of Lord Kenyon, in *Lawson* v. *Weston*, 4 Esp. 56, the contrary principle " would at once paralyze the circulation of all paper in the country, and with it all its commerce." This is, perhaps, a strong mode of stating the difficulty, but there can be no doubt that it would lead to much embarrassment if it should be held that money, or negotiable paper passing by delivery, which has once been stolen, can be recovered from any person into whose hands it may afterward come.

It is urged, however, that our legislature has established a different rule. The sixty-second and sixty-fourth sections of our Criminal Code are as follows :

" Sec. 62. Larceny is the felonious stealing, taking and carrying, leading, riding, or driving away, the personal goods of another. Larceny shall embrace every theft which deprives another of his money or other personal property, or those means or muniments by which the right and title to property, real or personal, may be ascertained. Private stealing from the person of another, and from a house in the day-time, shall be deemed larceny. Larceny may be also committed by feloniously taking and carrying away any bond, bill, note, receipt, or any instrument of writing of value to the owner. Every person convicted of larceny shall be punished by confinement in the penitentiary for a term not less than one year, and not more than ten years.

" Sec. 64. All property obtained by larceny, robbery or burglary, shall be restored to the owner, and no sale, whether in

good faith on the part of the purchaser or not, shall divest the owner of his right to such property. Such owner may maintain his action, not only against the felon, but against any person in whose possession he may find the same."

It is to be remembered, that our Criminal Code was designed to be a complete system of criminal jurisprudence, and it therefore necessarily contains a great number of provisions which are simply declaratory of the common law. It is not therefore to be inferred that the sixty-second section was designed to change the common law rule, merely from the fact that there is a section relating to this subject. The question is, as to the sense in which the word "property" is used in this section. If the literal sense is to be given to the phrase "all property," then we must hold that stolen coin or stolen bank bills can be recovered. They are property as much as government bonds. But such a construction would be directly in the teeth of what all courts have held to be the necessities of a commercial people, and is not consistent with other language in the same section. For the property referred to is of such a character as to be, by the very terms of the section, the subject of sale, and the circulating medium of a country cannot, with propriety, be so regarded. It is the instrument by which sales are made, but not itself the subject of sale. It would seem, then, that a limit must be placed by construction to the most extended sense of the term "property," and in fixing that limit we can have no safer guide than the common law, unless, in following it, we are clearly doing violence to the legislative intent. This construction is, however, sustained by the language of the sixty-second section: "Money," "other personal property," and "bond, bill, note, receipt, or any instrument of writing of value to the owner," are all severally enumerated as subjects of larceny, as if they were not all comprehended under the general term "property." We do not adopt a strained construction when we hold that the term "property," in the sixty-fourth section, is used in the same restricted sense as in the sixty-second section, where it clearly is not used as comprehending either money, or bonds, bills and notes. The government bond

stolen in this case, passed, like a bank bill, by delivery merely, and at the common law could not be recovered by the former owner from this defendant. In our opinion the statute was not designed to change the rule.

*Judgment affirmed.*