## Max Rothstein and William Rothstein, trading as Majestic Dress Company of New York, Appellees, v. Jacob G. Grossberg and Nathan Haffenberg, trading as Grossberg & Haffenberg, Appellants.

### Gen. No. 26,041.

1. BILLS AND NOTES—*rights of innocent holder, in due course, for value.* Nothing short of bad faith will invalidate the title of one taking negotiable paper as an innocent holder in due course, for value.

2. BILLS AND NOTES—*form of signature of check as notice of maker's representative capacity.* The signature to a check being "Majestic Dress Co. by E. Ben Weitzen, agent," was notice to a taker that the maker was acting in a representative capacity.

3. BILLS AND NOTES—*sufficiency of evidence to charge taker of check with notice of maker's lack of authority.* Where attorneys employed to defend one charged with violation of the Mann Act took from him checks signed with a firm name by their client "as agent" and knew that the checks exhausted the fund upon which they were drawn, they were charged with notice of the misappropriation of such fund and that the checks were drawn without authority.

McSURELY, J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in this court at the March term, 1920. Affirmed. Opinion filed October 17, 1921. Rehearing denied November 4, 1921.

GROSSBERG & HAFFENBERG, *pro se.*

No appearance for appellees.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The appellees here, who were plaintiffs below, are a copartnership doing business in New York and Chicago under the name of the "Majestic Dress Company." The defendants, appellants, are copartners engaged in the practice of law in Chicago,

In their statement of claim the plaintiffs allege that they maintained an office in Chicago conducted by one E. B. Weitzen; that on or about September 24, 1918, said Weitzen became involved in litigation which made it necessary to furnish a surety bond, and that for this purpose, and to represent him in the litigation, defendants were employed; that September 24 said Weitzen withdrew from the funds of plaintiffs, to which he had access, $1,750; that $1,500 of this amount was deposited with defendants as security for the surety on the bond of said Weitzen; that these moneys were withdrawn without authority, and were not used for the purpose of carrying on the business of the plaintiffs, but were, on the contrary, used for the personal affairs of their said agent, E. B. Weitzen, of which defendants knew or ought·to have known; that on demand $1,000 of the amount had been returned to plaintiffs, but payment of the balance was refused, wherefore plaintiffs sue as for money had and received.

The affidavit of merits sets up that the money sued for was received by defendants in the form of checks, and from E. B. Weitzen for a valuable consideration, "to wit: for legal services rendered the said E. B. Weitzen, at his instance and request," and that the defendants at the time of receiving the checks and proceeds thereof did not have any knowledge or notice that the checks were not the property of said Weitzen, or that he did not have full right and authority to dispose of the proceeds thereof.

The cause was tried by the court without a jury and the court found the issues against the defendants, assessed plaintiffs' damages at $790.50, and entered judgment therefor.

The evidence tended to show that at the time in question E. B. Weitzen had a written agreement with plaintiffs, doing business as the Majestic Dress Company, in and by which it was provided that he should

take charge of plaintiffs' business in Chicago and devote his whole time and attention to it, under their sole direction; that it should be his duty to perform any and all services required by them; that the merchandise should be sold in their name; that the merchandise should be supplied by plaintiffs and charged to the Chicago branch at cost plus 10 per cent; that Weitzen was to have no power to buy any merchandise or incur any debts or expense on behalf of the firm unless first authorized. The Chicago branch was to charge all sales made by it and receive payments on same direct, and all such payments and any other moneys received should be deposited in such bank as plaintiffs might designate in the City of Chicago, under the name of the "Majestic Dress Company" to its credit, and payment should be made to plaintiffs immediately of all moneys over $500 on deposit in bank; that all approved expenses of the Chicago branch were to be paid direct from this account; and that no payment from the funds of the "Majestic Dress Company" should be made for any other purpose than as enumerated.

Clause 7 provided: "All checks drawn on said deposit account of the Chicago branch are to be signed * * * in the firm name, as agent, as follows: 'Majestic Dress Company, by E. Ben Weitzen, agent.'"

It was further agreed that Weitzen should receive a salary of $50 a week and in addition thereto 33⅓ of the net proceeds shown by the regular inventory, and that he should take inventory every 3 months; that Weitzen should have the privilege of withdrawing 10 per cent of his share of the net profits at the end of any inventory year, the balance of such profits to remain in the business until the termination of the agreement, which was to commence on the 1st day of November, 1917, and to continue in full force until 30 days after written notice of either party should

have been given of the desire to terminate the same. In that event final inventory should be taken to ascertain the net profits, and Weitzen should be entitled to receive 80 per cent of his share of the net profits in cash within 30 days after the completion of the final inventory, the balance to be paid upon the final accounting, when all assets were reduced to cash. This memorandum was accepted November 6, 1917, and the National City Bank of Chicago was designated as the bank of deposit.

E. B. Weitzen became involved in trouble with the federal authorities. He was taken in custody on a charge of violating the "Mann Act." A brother named Joe Weitzen then visited the office of defendants for the purpose of securing legal assistance. E. B. Weitzen was not prior to this time known to defendants. The matter in hand was conducted on behalf of defendants' firm with Mr. Haffenberg, who informed Joe Weitzen that the firm must have a "retainer." It was also desired to secure the release of the parties involved on bonds, and the sureties refused to execute the same unless indemnified. Under these circumstances Joe Weitzen took about twelve blank checks to his brother, E. B. Weitzen, and the same were signed by him in blank, "Majestic Dress Co. by E. Ben Weitzen, agent." These checks thus executed were delivered to Joe Weitzen, who took three of them to the office of the defendants, where these checks were filled out by Mr. Haffenberg, one to the order of the firm for $250, which was marked "retainer." This was accepted by the bank on which it was drawn and, being deposited to defendants' account, was paid through the Clearing House. The two other checks were filled out for the sum of $1,000 and $500, respectively, payable to bearer; the check for $1,000 was presented by Joe Weitzen to the National City Bank for acceptance, which was refused by the

bank because the check was payable to bearer. The bookkeeper of the Majestic Dress Company then indorsed the check and the amount of it was paid by the bank to Joe Weitzen in currency. This currency was then taken to defendants' office and with the check for $500 delivered to defendants as trustees, to hold the same as indemnity for the bondsmen.

A few days thereafter the proceedings in the United States Court were dismissed. Defendants' firm performed all legal services necessary in connection with the matter and made a charge therefor of $500 in addition to the retainer, which the uncontradicted evidence shows to be a reasonable charge for the services performed. October 9, 1918, E. B. Weitzen notified defendants to turn over to plaintiffs the $1,000 in currency and the check for $500, which they held as trustees, stating:

"The foregoing sum of $1,500.00 is and was withdrawn from the funds of the Majestic Dress Company and the money should be turned over to them."

October 12, 1918, defendants turned over to plaintiffs' attorney $1,000 of that amount, which it was agreed was to be accepted without prejudice to any rights that plaintiffs might have in the matter. At that time the plaintiffs gave notice that they also claimed the $250 which had been paid as a retainer.

Propositions of law and fact were submitted by defendants. The court held in the first proposition, as requested, that if in accepting the money and checks defendants had grounds to suspect that E. B. Weitzen was misappropriating funds of the plaintiffs, if he was so appropriating the same, and if such funds were funds of the plaintiffs, and even though the act of accepting the money and checks in question was an act of negligence or of gross negligence, if it was that, provided that in accepting the same the defendants were not guilty of bad faith, or were not intending to participate in such misappropriation, then the title to the proceeds of such money and checks passed to

Rothstein et al. v. Grossberg et al.,' 222 Ill. App. 228.

the defendants for all purposes for which they were given, the same as though the funds in question were indisputably the funds of the said E. B. Weitzen alone. By the eleventh proposition, that even if by drawing and negotiating the checks, E. B. Weitzen was guilty of a misappropriation of the funds of the plaintiffs, or even of an embezzlement, still, if the defendants had no actual knowledge of such misappropriation or embezzlement or knowledge of such facts, that their action in taking the checks amounted to bad faith, and they took the same for a valuable consideration, then title to such checks passed to defendants. By the twenty-first, that the defendants, before receiving the checks or funds in question, were not bound to make inquiry of the plaintiffs in New York as to the extent of the authority of the said E. B. Weitzen to draw on the funds of the business of the Majestic Dress Company in Chicago for his own individual purposes. The court also held, as a proposition of fact, that the defendants in receiving the checks in question did not act in bad faith, and by the eighth proposition of law that the defendants in receiving the checks in question became and are deemed prima facie to be holders in due course. That some of these propositions of law and fact were, as appellants contend, inconsistent with the general finding for plaintiffs, must, we think, be conceded. That the court inadvertently so held is, we think, apparent from other propositions of fact and law which were asked by defendants and refused.

The court refused to hold, as requested by defendants, that defendants became holders in due course, and refused to hold, as a proposition of law, that in receiving the checks in question defendants had no actual knowledge of any infirmity or defect in the title to the funds of E. B. Weitzen, nor knowledge of such facts that their action in taking such checks amounted to bad faith. The court further refused to

hold that there was no presumption of misappropriation by E. B. Weitzen of any funds nor of any invalidity of the checks in question from the mere fact that such checks were signed, "Majestic Dress Company, by E. B. Weitzen, agent." It is apparent, therefore, that the court was of the opinion that the mere fact that the checks were signed as they were put the defendants upon notice.

Appellees have not appeared in this court, and we regret the necessity of deciding the case without the presentation of both sides. We think the propositions of law, in so far as the same held that nothing short of bad faith would invalidate the title of one taking negotiable paper as an innocent holder in due course, for value, stated the law of this State as set forth in the decisions of the courts and in the Negotiable Instruments Act. *Jones v. Nellis*, 41 Ill. 482; *Bemis v. Horner*, 165 Ill. 347; Hurd's Rev. Stat. 1919, sec. 56, p. 2029 (Cahill's Ill. St. ch. 98, ¶ 76). But we do not think the defendants, under the undisputed evidence, can be held to be such holders.

While E. B. Weitzen was given a general power to draw checks, the form in which such checks might be drawn was definitely stated. The bank presumably would not have paid out plaintiffs' money upon any other signature. That form on the face of each check gave notice to the taker that the maker was acting in a representative capacity; that he was only an agent, not a partner, and that his authority was therefore limited by the terms of his agreement and the scope of his agency. When the checks were presented to defendants this notice appeared on the face of them, and defendants cannot now be allowed to claim that they were ignorant thereof. Mr. Haffenberg's testimony is to the effect that he did not even look at the form of the signature.

The uncontradicted evidence shows important actual knowledge on the part of the defendants. They

knew that the agent in this case was drawing out of his principals' funds money for the agent's own purpose and for his own private benefit. They knew the consideration for the checks did not move to the owners of the fund. Defendants' legal services were not given for the benefit of the principals. Of all these matters defendants had affirmative and positive knowledge. They also knew the agent was in custody at the time the checks were issued; that he was charged with a serious offense, and that under such circumstances the temptation to misappropriate the funds of his principals might be very great. The evidence also discloses that they knew that the first two checks exhausted the funds on hand in the bank, and that by agreement and for that reason the other check was held several days before it was banked.

We think the question here raised is not different in principle from that arising in cases where the president or other officer of a bank uses the authority conferred on him by the board of directors to make or accept negotiable paper, and with the knowledge of his creditor draws on the bank's funds to pay his own personal obligations by means of such bills or notes. It has been held that such bills on their face put the debtor on notice that the funds of the bank are being misapplied. In a case of that sort (*Anderson v. Kissam*, 35 Fed. 699) the court said:

"Therefore, if there is any significance in the fact that a bank president or cashier offers negotiable paper of his corporation, made by him in his official character, in payment of his personal debt, or to raise money for his personal use, it matters not that bankers generally do not appreciate it. If they regard the transaction as equivalent to one in which the individual comes with money in hand, they ignore its real character, because in that case he comes with what purports to be his own, having the possession which implies title and ownership, and the right to use it as he sees fit. When he comes with money obliga-

tions of a corporation, which is the contract of a corporation only because he has made it, and which is not its contract if he has made it without authority, the transaction is a very different one. Every person who takes such an obligation must ascertain at his peril that the agent who has made it was authorized to do so; and the moment that it appears that the contract has been made for the agent's own use and benefit, that moment his authority is impugned and impeached. No principle of the law of agency is better settled than that no person can act as an agent for another in making a contract for himself. Therefore it is that a bank president or cashier has no implied authority to bind his corporation to negotiable paper made for his own use; and if it appears upon the face of it that it is payable to the individual who has made it in an official capacity, the obligation is nugatory, and no purchaser can enforce it.''

In a similar case the Circuit Court of Appeals approved the law as thus stated. *Lamson v. Beard,* 36 C. C. A. 56. The authorities are collected in a note to *Mee v. Carlson,* 29 L. R. A. (N. S.) 351. See also, R. C. L., vol. 3, sec. 289. We think the rule stated obtains here, in the absence of estoppel of the plaintiffs, of which there is no proof. *North River Bank v. Aymar,* 3 Hill (N. Y.) 262; *Bank of Batavia v. New York, L. E. & W. R. Co.,* 106 N. Y. 195.

The judgment is affirmed.

*Affirmed.*

DEVER, P. J., concurs.
McSURELY, J., dissenting.