## Maude Drouineau, Appellee, v. First National Bank of Marion, Illinois, Appellant.

1. NEGOTIABLE INSTRUMENTS—*title acquired by bona fide purchaser of stolen instrument.* A purchaser of a negotiable instrument, acquired for value before maturity and without notice, acquires a good title notwithstanding the instrument was stolen from the true owner.

2. NON-NEGOTIABLE PAPER—*special assessment bonds*. Special assessment bonds of a city, though payable to bearer, are payable out of a special fund and are not negotiable instruments.

3. NON-NEGOTIABLE PAPER—*title under unauthorized pledge of assessment bond*. Without proof that one who puts up as collateral for a loan from a bank special city assessment bonds had authority from the owner to do so, the bank will be liable to the owner for the amount of the bonds.

4. NEGOTIABLE INSTRUMENTS—*title of pledgee before maturity*. The indorsee of a negotiable note, who receives it before maturity as collateral in the usual course of trade, is a holder for value.

5. NEGOTIABLE INSTRUMENTS—*what insufficient to charge pledgee with notice of defect in title*. Under Cahill's St. ch. 98, ¶ 75, providing when title to a negotiable instrument is defective, and Cahill's St. ch. 98, ¶ 76, providing what shall be notice of such infirmity to a purchaser, proof that the bank knew that the purchaser of certain negotiable bonds paid for them with her own money will not constitute notice to them that the bonds, put up by the husband as collateral for a loan from the bank, were taken by the husband without his wife's consent.

6. NEGOTIABLE INSTRUMENTS—*liability of pledgee after notice of defect in title*. Under Cahill's St. ch. 98, ¶ 74, providing that the holder in due course of an instrument is so only to the extent of the amount paid thereon before notice of defect, a bank which loaned $1,600 on $2,000 negotiable collateral put up by a husband without the consent of his wife, the real owner, is liable to her for the $400 excess after she notifies it that she did not consent.

7. PLEDGES—*title of pledgee to bonds pledged without authority*. The title to bonds, put up as collateral with a bank by the husband of the true owner without her consent, vests in the bank after it pays the value of the non-negotiable collateral, and the value of the negotiable collateral above what it actually loans thereon.

Appeal by defendant from the City Court of Marion; the Hon. R. R. FOWLER, Judge, presiding. Heard in this court at the October term, 1926. Reversed. Judgment reversed and judgment entered here with finding of facts. Opinion filed April 15, 1927.

WILLIAM H. WARDER and HOSEA V. FERRELL, for appellant.

D. L. DUTY, for appellee; RAY D. HENSON, of counsel.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellee and her husband lived in Marion, Illinois, and the husband conducted the French Benzol Cleaning and Dyeing Company. Appellee furnished him with the money with which he engaged in that business. Appellee and her husband were customers of appellant. On December 11, 1924, she purchased from appellant three bonds issued by a New York corporation and secured by a mortgage on real estate. The bonds were negotiable and payable to bearer. One of them was for $1,000, and the other two for $500 each. At the same time she also purchased from appellant three special assessment bonds issued by the City of Marion, Illinois, in the sum of $200 each, payable to bearer. At the time of the purchase she and her husband had a safety deposit box at appellant's bank and each of them had a key and had access thereto at all times. Appellee testified that the day after she purchased the bonds aforesaid she placed them in the safety deposit box.

On March 9, 1925, appellee's husband procured a loan from appellant for $800 for which he executed his note and deposited with appellant the $1,000 bond as collateral security. On May 1, 1925, he procured another loan of $800 from appellant for which he gave his note and deposited the two $500 bonds as collateral security. On June 27, 1925, he procured a third loan from appellant for $500 and deposited the three special assessment bonds as collateral security.

In the latter part of January, 1926, he left Marion and has never been heard from. Soon after he left, appellee went to the safety deposit box and found that the bonds were gone. Upon inquiry at the bank she was informed that her husband had procured the loans aforesaid and had deposited the bonds as collateral security, and that she could have them upon payment of the notes. She declined to make payment and appellant refused to deliver the bonds. She then brought this suit in replevin and the bonds were not procured

on the writ. In her declaration she inserted a count in trover and later amended that count and withdrew the count in replevin. The case was tried upon the amended count in trover and the general issue. The trial resulted in a verdict and judgment in her favor for $2,600.

Upon the trial of the case appellee called the cashier of the bank as a witness in her behalf. He testified that appellee and her husband came to the bank and expressed their desire to purchase some bonds; that the bonds were paid for by appellee; that appellant made the several loans aforesaid to appellee's husband and that he deposited the bonds aforesaid as collateral security for the said loans. He also testified that at the several times when the loans were procured and the bonds deposited as collateral it did not occur to him that the bonds so deposited were the same bonds which the bank had previously sold to appellee; that he had no notice of any kind that appellee's husband was not the owner of the bonds at the time he received them as collateral security on the several loans aforesaid. There is no substantial conflict in the evidence. Appellee testified that the bonds were her property and that she had never given them to her husband nor authorized him to use them as collateral security.

It is familiar law that one in possession of chattels by theft can convey no title to an innocent purchaser. Coin and bank bills are excepted from the rule. And from the highest considerations of public policy, the law also excepts from the rule negotiable instruments acquired for value in good faith before maturity and without notice. It may be taken to be the well-settled rule of law that the transfer of stolen commercial paper, negotiable by delivery, to a bona fide purchaser, for value, without notice and before maturity, vests him with a good title against all the world. The rule seems to be the same in the case of instruments that

have been lost.  3 R. C. L. 1000; 8 C. J. 796; 9 C. J. 63; *Jones v. Nellis*, 41 Ill. 482.

That rule does not apply to instruments that are non-negotiable.  8 C. J. 797; 9 C. J. 63.  The three special assessment bonds, payable to bearer, are payable out of a particular fund and are not negotiable instruments.  *Northern Trust Co. v. Village of Wilmette*, 220 Ill. 417.  Appellant did not undertake to show that appellee's husband had authority from her to use the special assessment bonds as collateral security.  In the absence of such authority appellant was not entitled to hold those bonds as against appellee.

The other bonds were negotiable, payable to bearer, and had not matured.  An indorsee of a negotiable note, who receives the same before maturity as collateral, in the usual course of trade, is a holder for value.  *Zollman v. Jackson Trust & Savings Bank*, 238 Ill. 290.

Appellee contends that her husband had no right, title or interest in the bonds and that when appellant received them as collateral security it had knowledge, actual or constructive, that the bonds were not his property but the property of appellee; in other words, that the title of her husband was defective and that appellant had notice of the infirmity.  Section 55 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 75, provides that the title of a person who negotiates an instrument is defective within the meaning of the act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud.

Section 56 of the same Act, Cahill's St. ch. 98, ¶ 76, says that to constitute notice of infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking

the instrument amounted to bad faith. Appellee's contention that appellant had notice that the bonds were her property at the time they were deposited as collateral security is based solely upon the fact that she purchased the bonds from appellant's cashier on December 11, 1924, and paid her own money therefor. In a similar case, where evidence of the same character was relied upon as proving notice, the court said: "The fact that respondents knew that the bonds had been purchased by Mrs. Kunze as her separate property does not prove that they acted in bad faith. They had a right to presume that George W. Kunze had personally acquired the bonds or that they were given to him by his wife to be used for the purpose of security." *Brokaw v. Kunze,* 127 Wash. 593, 221 Pac. 590. In *Texas Banking & Insurance Co. v. Turnley,* 61 Tex. 365, the court applied the doctrine in question to a railroad bond owned by a wife whose husband, without her knowledge, took it and pledged it as collateral security for his individual indebtedness contracted at the time.

Under the law and the evidence appellant is not entitled to hold the special assessment bonds as security for the $500 loan. The evidence shows that those bonds were the property of appellee. As to the other bonds, appellant is a bona fide holder in due course and without notice of any infirmity or defect in the title of appellee's husband at the time he deposited the same as collateral. Those bonds amount to $2,000, and the loans for which they were pledged amount to $1,600. Section 54 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 74, provides that where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he had paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him. Under that section, when appellant learned that the

title of appellee's husband was defective it had paid out $1,600. When it received that information it ceased to be a bona fide holder in due course for any other sum.

Under the law and the undisputed facts appellee was entitled to recover but $1,000. The judgment for $2,600 is reversed and the clerk of this court will enter judgment here in favor of appellee and against appellant for the sum of $1,000. Each party will pay one-half of the costs in the trial court and in this court. Upon payment of the judgment the title to all of the bonds will vest in appellant by operation of law.

*Judgment reversed and judgment entered here with finding of facts.*

The clerk will incorporate in the judgment the following: The court finds that appellant was a holder in due course of the negotiable bonds and without notice of any defect in the title thereto to the extent of $1,600.