Hugo Funk et al., Appellants, v. Mid-City Trust & Savings Bank, Appellee.

Gen. No. 34,399.

468 

 Heard in the third division
of this court for the first district at the June term, 1930. 
Opinion filed March 11, 1931.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, for appellants; WILFRED M. DOHERTY and ROBERT E. WRIGHT, of counsel.

GUSTAV E. BEERLY, for appellee; DWIGHT A. POMEROY, of counsel.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Plaintiffs, as trustees of South Park Lodge No. 488, I.O.O.F., filed their suit in replevin against the defendant Mid-City Trust & Savings Bank for the recovery of certain bonds, and upon the return of the writ unexecuted as to said property, filed certain counts in trover for their value. Before trial the declaration was amended so that it appears that the action was maintained for the use of Globe Indemnity Company, as subrogee. At the close of the evidence, the court

directed a verdict in favor of the defendant and judgment was entered upon the verdict. From that judgment an appeal was perfected to this court.

From the facts it appears that one Nathan Meyer was treasurer of the South Park Lodge from 1923 to January, 1927. He purchased in 1923 from the defendant, Mid-City Trust & Savings Bank, certain bonds which are hereinafter referred to as the Novak bonds and on or about March 1, 1926, purchased from the Madison & Kedzie State Bank certain bonds known as the Alding bonds. These bonds, which were the property of the lodge, were kept in a safety deposit box at the Independence State Bank.

In December, 1926, one Leonard A. Cohan was elected treasurer to succeed Meyer, and took office on the first Friday in January following. Shortly thereafter the bonds were transferred from Meyer to the new treasurer Cohan and he, in turn, took possession of the lock box and its contents which included the bonds in question. About the middle of October, 1927, the officers of the Lodge discovered that Cohan, the treasurer, had misappropriated the bonds and had disappeared. Upon investigation it developed that both the·Novak and the Alding bonds had been pledged by Cohan for his personal account with the defendant.

It appears that on July 22, 1927, Cohan borrowed $5,200 from the defendant bank and deposited the Novak and Alding bonds as collateral security for the payment of his note. This note was renewed upon three different occasions, the last time on October 7, 1927. December 12, 1927, the defendant bank sold the Alding bonds to the Madison & Kedzie State Bank and took over the Novak bonds in payment of the note of Cohan which he had failed to pay on maturity.

It is insisted on behalf of the plaintiffs that the bonds in question were not negotiable and that, therefore, the defendant acquired no title in view of the fact

that they had been wrongfully pledged by Cohan, while acting as treasurer of the Lodge. The rule is well settled in this State that the indorsee or assignee of commercial paper who takes the same before maturity for a valuable consideration, without knowledge of any defects in the title and in good faith, will be protected.

The Supreme Court of this State in the case of *Bradwell v. Pryor,* 221 Ill. 602, says:

"The rule now is, that the indorsee or assignee of commercial paper who takes the same before maturity for a valuable consideration, without knowledge of any defects and in good faith, will be protected against the defenses of the maker, and mere suspicion of defect of title or the knowledge of circumstances calculated to excite suspicion in the mind of a prudent man, or even gross negligence on his part at the time of the transfer, will not defeat his title. In other words, the only thing which will defeat his title is bad faith on his part, and the burden of proof is upon the person assailing his right to establish that fact by a preponderance of the evidence. (*Matson v. Alley,* 141 Ill. 284; *Bemis v. Horner,* 165 id. 347; *Merritt v. Boyden,* 191 id. 136; *Murray v. Beckwith,* 81 id. 43; *Shreeves v. Allen,* 79 id. 553.) However harsh this rule may, on first impression, seem to be, it is based upon the policy of the law which gives full faith and credit to commercial paper transferred before maturity, so that it may circulate, as far as possible, with all the conveniences of currency."

In the case of *Drouineau v. First Nat. Bank,* 244 Ill. App. 251, it appears from the facts that the husband of the plaintiff wrongfully hypothecated certain bonds belonging to her and procured a loan from the defendant bank with the bonds of plaintiff as collateral security. The bonds in that case, as are the bonds in this case, were payable to bearer and it was there

held that the bank in the absence of bad faith and actual knowledge had the right to be protected, and, that having dealt with the husband of the plaintiff in good faith, the bonds being negotiable and before maturity, it was entitled to retain them or their value as against the plaintiff. The court in its opinion says:

"It is familiar law that one in possession of chattels by theft can convey no title to an innocent purchaser. Coin and bank bills are excepted from the rule. And from the highest considerations of public policy, the law also excepts from the rule negotiable instruments acquired for value in good faith before maturity and without notice. It may be taken to be the well-settled rule of law that the transfer of stolen commercial paper, negotiable by delivery, to a bona fide purchaser, for value, without notice and before maturity, vests him with a good title against all the world. The rule seems to be the same in the case of instruments that have been lost. 3 R. C. L. 1000; 8 C. J. 796; 9 C. J. 63; *Jones v. Nellis,* 41 Ill. 482."

We are asked to hold the Novak and Alding bonds in the case at bar as non-negotiable on the ground that they are not complete in themselves, in that they are expressly declared to be but a part of a contract embracing an entirely separate extrinsic agreement. It is insisted that on the face of both the Alding and Novak bonds, it appears that they are secured by a trust deed which is to be taken and considered together with them as part of the same contract and agreement. It is pointed out in the Alding bonds that they are payable in the manner described by the trust deed; that the trust deed contains an acceleration clause providing that they may be redeemed in a certain manner and upon terms prescribed in the deed prior to the date of maturity; that in default in the payment of interest or any of the principal they may become due on or before maturity; that the mortgagor covenants

to co-operate with the trustee to have said bonds quali-
fied under the Blue Sky Laws, Cahill's St. ch. 32, ¶ 254
*et seq.;* that each bondholder agrees not to commence
any proceeding except as provided for in said agree-
ment; that the trustee in the trust deed shall have the
right to waive, modify or amend any of the conditions
of the covenants; that the trust deed contains a pro-
vision by which the mortgagor agrees to deposit with
the trustee an amount equal to any federal income tax
levied or assessed, dependent upon the amount of the
so-called normal tax, but in no event in excess of 2
per cent.

Both the Novak and Alding bonds are payable to
bearer and are in form the usual, customary real estate
bonds under which the mortgagors for value received,
on a day certain, agree to pay an amount certain, to-
gether with interest on presentation. The Negotiable
Instruments Act, Cahill's Illinois Revised Statutes,
1929, ch. 98, ¶ 21, provides that a negotiable instrument
must be in writing and signed by the maker or drawer;
must contain an unconditional promise or order to pay
a certain sum of money; must be payable on demand
or at a fixed or determinable future time and must be
payable to the order of a specified person or to bearer.
Section 23 of the same act provides that an unqualified
order or promise to pay is unconditional within the
meaning of this Act, though coupled with a statement
of the transaction which gives rise to the instrument.

The bonds in question on their face contain all the
requirements necessary in order to conform to the
requisites of the statute in order to come within the
meaning of a negotiable instrument under section 21 of
the Negotiable Instruments Act. The same act provides
that such an instrument is negotiable, even though
coupled with a statement of the transaction giving rise
to the instrument. The trust deed referred to on the
face of the bonds in question is a statement of the

transaction, as a result of which the bonds were issued. There is nothing in the trust deeds that provide for nonpayment, but they do prescribe the terms, under which their collection may be enforced in the event of a default. *National Bond & Inv. Co. v. Lanners,* 253 Ill. App. 262; *Doyle v. Considine,* 195 Ill. App. 311; *Enoch v. Brandon,* 249 N. Y. 263; *Continental Guaranty Corp. v. People's Bus Line, Inc.,* 31 Del. 595, 117 Atl. 275.

An examination of the trust deed securing the bonds, discloses that the terms of the trust deed are with reference to the acceleration of principal and interest and the rights of the bondholders with reference to foreclosing prior to maturity and other terms and conditions with reference to what can be done by the bondholders and the trustee of the trust deed in the event of a default or with reference to the safety of the bondholders. There is nothing in the terms that could be in any manner construed as a waiver by the bondholder of the right to enforce collection of the obligation which he holds. In the event the terms and conditions of the mortgage are lived up to and the interest paid, the bondholder by the express terms of his bond is entitled only to interest until the bond reaches maturity. There is nothing, however, to prevent his collecting the full amount from the makers of the bond, either upon the instrument itself or by enforcement of the trust deed. *Enoch v. Brandon,* 249 N. Y. 263.

We have examined the evidence with reference to the question as to whether or not the defendant took the bonds with notice, and are of the opinion that the evidence was insufficient to charge the defendant with knowledge of the fact that the bonds were not in fact the property of Cohan at the time they were deposited as collateral security by him. Some stress is laid upon the fact that the Novak bonds were purchased from the

defendant by Meyers, treasurer of the plaintiff lodge, but these bonds were of a series of bonds and the transaction took place some time prior to the time they were presented by Cohan. There is nothing in this fact which would place the bank on actual notice. The probability of notice by the bank, or a mere suspicion, is not sufficient. *Drouineau v. First Nat. Bank,* 244 Ill. App. 251; *Bradwell v. Pryor,* 221 Ill. 602.

In our opinion the bonds in question were negotiable, and there is nothing to show that the defendant took them other than in the due course of business and without notice.

For the reasons stated in this opinion the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL and FRIEND, JJ., concur.